Case number 17-5278. Daniel Barker, appellate, v. Patrick Conroy, chaplain at Elle, v. Seidell, for the appellate. Ms. Dunbar, for the accolades. Your Honors, may it please the Court, Andrew Seidell, representing the appellant, Dan Barker. Dan Barker was invited by his representative to do something hundreds of other individuals have done, deliver a prayer at the U.S. House of Representatives. In his prayer, Barker wanted to invoke unifying and solemn themes and, quote, rejoice in the inalienable liberty of conscience our forefathers and foremothers risked their lives to protect. In this way, Barker's prayer would have been no different than other prayers delivered before the House. His would not have been the first non-theistic prayer. The chaplain denied him that opportunity because of who he is, an atheist. Now, the Supreme Court laid out the two rules that govern the outcome of this case in Town of Greece v. Galloway and Marsh v. Chambers. Before you get to that, I just have a preliminary question. Sure. About Kurtz. Government says this case isn't any different from Kurtz. I think this case differs from Kurtz in two major respects. Yeah. First, Kurtz was seeking special treatment. Barker is seeking equal treatment. So Kurtz was seeking an opportunity that was rare and only extended to heads of state. He wanted to address Congress. He specifically said that he would not say a prayer if he were invited. On the other hand, Barker has said he will say a prayer if he's invited. He's not seeking to address Congress. And, in fact, he actually cannot address Congress. That's part of the rule, as we understand it, in the prayers, something the district court got wrong. And he's seeking to do something that hundreds of other individuals have done. I just had two distinctions. Before you get to your second point, when you first stood up, you said that Mr. Barker wants to deliver a prayer. Yes. Which distinguishes this from Kurtz. But throughout the complaint, he calls it a invocation. That's the same as a prayer? Yes, Your Honor. Is there any reason why? I'm just curious, why did he use the word invocation throughout the complaint instead of prayer? Just consistency, Your Honor. I mean, the Supreme Court used prayer and invocation. So there's no significance to that? No, Your Honor. So one difference here is in Kurtz, the plaintiff did not want to deliver a prayer. He wanted to give a speech. Correct. And Mr. Barker wants to give a prayer. Correct. So did you say there was a second distinction? Yes. In Kurtz, the injury was not fairly traceable to the chaplain's actions. Here it is. Part of that is because in Kurtz, Paul Kurtz was seeking a special opportunity to address Congress, which the chaplain doesn't have the power to do. And we know that the chaplain has the power to approve guest chaplains. All right. We'll go on back to the merits of your argument. Go ahead. So I think the Supreme Court laid out the two rules that govern the outcome of this case. First is that when the government invites guest chaplains in, as they are doing here, remember 40 percent of the prayers are delivered by guest chaplains. When they invite guest chaplains in, they must maintain a policy of nondiscrimination. They can't exclude certain creeds. Second, when the government invites those guest chaplains in, those guest chaplains must be allowed to deliver their prayers as their conscience dictates, not in the manner the federal government dictates. Are you arguing that a client was foreclosed from speaking, giving the invocation, because he's an atheist? Yes, Your Honor.  Yes, Your Honor. Because there is a policy against it or because, in his case, he was discriminating? Which? When I read the complaint, I'm not sure what you're saying. Do you think that there is a rule that the chaplain follows? No, there are. Is there a time that atheists will not be allowed to give the invocation? And if so, how does your complaint support that suggestion? And if not, then what is your complaint? Our complaint is that, as applied to Barker, the chaplain discriminated against him because he's an atheist. So you're saying in this case, without regard to what the rules are, I'm not sure you're telling me. Without regard to what the rules are. Sure. As I hear you now, you're saying it doesn't matter. You're saying in this case, my client was discriminated against because he was an atheist. That's correct, Your Honor. Now, is that what the chaplain's letter says? The chaplain's? The chaplain's letter said he was demined the request because his certificate of ordination is not current or legitimate for purposes of my considering. So we're arguing that he was discriminated against because he's an atheist, in part because we have shown that the reasons the chaplain gave don't hold up. There are other prayer givers who did not address a theistic higher power in their prayers, and the chaplain allowed those individuals to come in and give prayers. On May 5th, 2015 – Wait, the reason the chaplain gave, what you just said doesn't show that the reason given was a pretext. The reason given was that giving him the best read. There are other individuals who were also not ordained and who were not practicing in the faith in which they were ordained, and we laid those facts out in the complaint. That's at 50-51 and 51-52. So there were eight Muslims, several Hindu, and two Christian guest chaplains that we identified that were not ordained at all, but were approved by the chaplain. So clearly, the ordination requirement was only a pretextual requirement that applied to Barker to exclude him. We believe because he is an atheist. But again, you're not asserting that there is a standard rule that's always applied against atheists. To our knowledge, Your Honor, Mr. Barker is the first atheist to request to give an invocation or prayer before Congress. So your answer is you don't know. You're just saying in this case, as far as you're concerned –  We're still at the motion-to-dismiss stage. We haven't had the benefit of discovery or anything like that, so as far as we know, yes, this is the first instance of discrimination against an atheist. The ordination rule is itself inherently discriminatory and would discriminate if it were applied equally to, for instance, Buddhists, but we know Buddhist guest chaplains have also delivered prayers. So I have a question about Marsh. So Marsh is really clear. The court in Marsh says that the court understood that prayer at that time was clearly religious. It says, quote, to invoke divine guidance on a public body entrusted with making the laws is not in these circumstances an establishment of religion. Right? Correct. So the prayer program that Congress found did not violate these statutes of the laws was a religious program. So explain to me how does adopting a guest chaplain program change that? In other words, how are we free to say, well, the Supreme Court has already said that the chaplain program, the prayer program in Congress is religious. It's existed from the time of the framing. It's not an establishment clause. But having opened it up to others, what allows us to rule that Congress has, by doing that, allowed a change in the nature of the program? The town of Greece versus Galilee, Your Honor. So in Marsh and in Greece, the legislative prayer itself was being challenged. That is not what we are challenging here. We are challenging the exclusion of an individual on the basis of their creed under that program once it's established. And I think the court in the town of Greece made it clear. Justice Kennedy wrote that once the government invites prayer into the public sphere, the government must permit a prayer giver to address that prayer. Right, but in that case, the plaintiff in that case was seeking to order the city council to have only non-sectarian prayer. Correct. That's what that was about. And the court said that in determining whether any prayer practice violates the establishment clause, courts must ask whether it fits within the tradition long followed in Congress and the state legislatures. There is no tradition long followed in the Congress and state legislatures of offering atheist prayers. Yeah, we would say non-theistic prayers, Your Honor. Non-theistic. Prayers that are not directed at the government. Yes, I'm sorry. Non-theistic prayers. Right. So the point that the court was making there, and again, the challenge there was not directed at an individual who was excluded, which I think is a significant difference. And Justice Alito in his concurrence said that it would present a very different case if there were evidence or if this had been a deliberate exclusion. And so you have that history, but it doesn't justify turning it against minority creeds and excluding them. And I think that nondiscrimination principle runs very clearly throughout Greece, and they actually even look at the history of prayers in the U.S. Congress and they point out that no faith was excluded by law nor any favored on 1819 and that Congress acknowledges our growing diversity not by prescribing sectarian content but by welcoming ministers and many creeds. And just as Congress can't, or any legislative body can't, declare that prayers must be sectarian or non-sectarian, they can't declare that prayers must be theistic or non-theistic, Your Honor. Could – suppose Mr. Barker had applied to be a House chaplain, and the House had said no because you're an atheist. Sure. Different case, right? I think that's – that is a different case. I think it's a harder case. Also in – What's hard about that case given Marsh? I think Marsh allows the government to choose the chaplain of its choice. I think the – And to choose a religious chaplain over a non-religious chaplain. Yes, Your Honor. You agree with that? I do agree with that. But your point is this case is different because he's not applying to be the House chaplain. He's applying under a guest program that's open to all religions, right? Correct. And because motive matters. And because what? Motive matters. In both Marsh and in Greece, the Court spoke of impermissible purposes and motives behind the prayer practices. And we would argue that discriminating against an individual and excluding minority creeds is an impermissible purpose. And once it's – I was going to ask you about that. You say in your brief several times that this unconstitutionally discriminates against minority religions and non-religions, right? You've got both in there. Yes. Okay. So Mr. Barker is – says in his complaint he's not religious. Correct. He's an atheist. He's an atheist. So in terms of standing or whatever, you don't really – the only issue your client, Mr. Barker, can raise is alleged discrimination between religious and non-religious, not between religions, because he says he's not religious, right? He doesn't have standing to argue that? Right. Yes, that's correct. You agree with that. However, we do point out that the rules that the chaplain – these unwritten rules that we argue are pretextual that the chaplain has established would, if they were applied equally and uniformly, would exclude certain minority creeds other than atheists and non-religious individuals. So the chaplain, again, has – Is there any language that you think you can point to in Marsh? You have the Alito concurrence in town of Greece, which clearly asserts his view that you can't exclude non-believers. Is there any such language that you're relying on in Marsh that says the rule can't be exploited to proselytize or advance anyone or to disparage any other faith or belief? I'm not sure they're exactly the same thing. Is there anything else in Marsh that comes close to the Alito language? Well, not precisely on part in the decision in Marsh, because, again, that wasn't the issue before the court. But in the oral argument, Justice O'Connor did ask a Nebraska state legislator's attorney whether or not guest chaplains had been excluded on the basis of faith, and the answer was no. And he even pointed out that no request for a guest chaplain had ever been denied. That's 10 minutes and 10 seconds into the oral argument on the OAS website. It was cited in the three members of Congress who briefed this case. So your answer to my question is there's nothing explicitly in the Marsh decision that embraces what Justice Alito says in concurrence in the town of Greece. Not in the Marsh decision, but there is language in the majority in the town of Greece as well. For instance, so long as the court was looking at the imbalance between how many Christian guest chaplains there were and others, and the court said that that was acceptable and not a violation of the Establishment Clause, so long as the town maintained a policy of nondiscrimination, that's at 1824, if the policy had, quote, reflected an aversion or bias against minority faiths, then that would have been different. Now, the minority faith isn't quite the same thing. Right. Does anyone pick up? And I'm not saying you're wrong. I'm just saying I'm curious as to whether there's any language you're pointing to that picks up the nonbeliever. Your claim here is there's discrimination against nonbelievers, at least as to your client. We don't know whether this is a practice, but at least as to your client. Is there any nonbeliever language in the majority opinions in either Marsh or in town of Greece? No. It's a nondiscrimination principle more broadly, and if that issue had been before them, I think that would have been applied uniformly. And there are other courts that have looked at those cases. We cited the Fields v. Pennsylvania House case, the Williamson v. Brevard County case, which have applied those to nonbelievers, but not the Supreme Court itself, Your Honor. And you really want, and I think the other side does not want us to look more broadly to the First Amendment body of law, which would embrace the nonbeliever point that you are raising here. Correct, Your Honor. Once there's an impermissible purpose or motive discriminating against minority creeds, then it shifts from that protection. Well, wait. You keep saying minority creeds. You don't mean minority creeds. You keep shifting. That's not your complaint. Your complaint is discrimination, at least the only thing you can reasonably assert here, discrimination against a nonbeliever. Right. That's your complaint. And once there is that impermissible purpose or motive, Your Honor, it shifts to the Torcaso v. Watkins, the Larson v. Valente, the Epperson v. Arkansas, where the government cannot be drawing lines between religion and nonreligion and between religion and other religions. And so subject, I take it, to what we were talking about earlier, namely that Mr. Barker wants to deliver a prayer, correct? Yes, Your Honor. Just not a theistic prayer. Correct, Your Honor. Again, he's not challenging the House rule. He's not challenging legislative prayer. He's just challenging his exclusion under it. Now, are you saying on a motion to dismiss on the pretext that you have pled enough on pretext for it to go forward, or they're undisputed? Well, you can't really have undisputed facts. I don't know that they're going to say that. I do think they are undisputed, Your Honor. I mean, the factual record is fairly substantial for a complaint here, and we've pointed to in every instance or for every rationale that the chaplain gave to exclude Barker, we have pointed to it. Well, I don't know how you can do it in light of what they've written. It's very clearly with aid of law counsel, I would guess, because it's kind of carefully crafted to kind of dance around some of the points here. The reason given was, you know, the ordination, its lapse, you're not really true to any of that. That's the explanation that the chaplain gave when he rejected the order. And even under that explanation, we've pointed to other guest chaplains who were not ordained, other guest chaplains whose ordination is they are no longer practicing in the faith in which they were ordained. And that itself is. So I think your answer is you think in terms of pleading requirements, you've pled enough for this to avoid dismissal on a motion to dismiss. Absolutely, Your Honor. Yes. On the pretext question. Yes, Your Honor. Thank you. Thank you. Thank you, Your Honor, and may it please the Court. Four decades of binding precedent from this Court and the Supreme Court compel affirmance of the judgment below. First, this Court's decision in Kurtz against Baker holds on functionally identical facts, as the district court correctly held, that an atheist, like a Christian, lacks standing to sue congressional chaplains for excluding him from the prayer opportunity. Well, what about the argument that in that case, Kurtz wanted to address the house, whereas Barker wants to give a prayer? In other words, in Kurtz, this Court said that the chaplain had no authority to allow someone to speak to the house because the rule says prayer, and Barker wants to give a prayer. Well, Your Honor, until today, Barker has never said he wants to give a prayer. Well, he said he wants to give a invocation, a secular invocation. Yes, Your Honor. And an invocation is defined by the dictionaries as including a prayer, right? Well, yes. He wants to, quote, invoke. Yes. He wants to invoke something. A secular invocation. He doesn't want to just address the members of Congress. He wants to invoke something, in his case, other than a divine authority. And precisely the same was true in Kurtz. This Court said in Kurtz that what the plaintiff there wanted to do was present a, quote, moral but non-theistic invocation, close quote. Indeed, the plaintiff's letter to the chaplains requesting permission said that while he would not invoke a deity, his, quote, remarks would otherwise fall within the traditional format, close quote. So Kurtz is factually indistinguishable on this point. And that's correct. Indeed, in this case, the request letter to the chaplain expressly says that he would deliver, that he intends to deliver a secular invocation. A secular invocation is not a prayer. No chaplain, guest chaplain or elected chaplain, has ever been permitted to deliver a secular invocation. And that is why the chaplain had no authority to grant this request. I mean, the problem with Kurtz really is quite different. I would assume you have more to say than just Kurtz. It's different in part because standing law has grown up over the years. So it's dubious on the causation disposition. And there is more than enough in the complaint here to suggest that the chaplain has discretion to be exercised. And, indeed, in one of the chaplain's written responses, he talks about his discretion. Kurtz is just, my view, you do what you want, your time. Kurtz is a lightweight argument, respectfully. And there are other things I think you want to get to. Well, with respect to Your Honor, Kurtz is a precedent of this Court, a binding precedent. And to the extent standing doctrine has changed, I submit it is. It is bound by the Supreme Court. Yes, Your Honor. So Kurtz is not a Supreme Court decision. And a lot has grown up around the causation notion. I mean, push it all you want if you want to, but you're wasting time, I think. We know what your argument is. I'm curious to hear some of your other arguments. Just note that the Supreme Court in Reins, which is post-Kurtz, emphasized the importance of applying standing principles with special rigor in the separation of powers context where we're talking about judicial intrusion into legislative activities. But in addition to Kurtz, of course, there is the separate non-justiciability problem here, illustrated by this Court's decision in Consumers Union, which holds that a claim challenging the exercise of delegated house authority to determine access to the House floor and galleries during a legislative session is non-justiciable, even though it was a constitutional claim there as well, because of the feature debate clause and the allocation of exclusive rulemaking authority in the Constitution to the House. I'd like to ask you to go right to what at least I think the heart of this case is, which is Mr. Barker's argument that, yes, you rely very heavily on Marsh, and you're absolutely right, Marsh recognizes that the morning prayers in the House are religious. But his argument is that that's not what this is about. This is about the guest chaplain program, where the House has opened up the prayer opportunity to people other than the House chaplain, and that invokes a different set of constitutional issues, namely the non-discrimination standard, the non-discrimination requirement of the town of Greece. What's the answer to that? Well, there are at least two answers, Your Honor. First of all, the Supreme Court in town of Greece unanimously, both the five justices in the majority and the four justices in dissent, said that the dispositive question on the merits in a legislative prayer case is whether the prayer practice falls within the traditions practiced in Congress. This prayer practice clearly does by definition fall within the traditions long practiced in Congress, and that should, if the Court were to reach the merits. Well, but Congress hasn't had a long practice of a guest chaplain program. It has, Your Honor. The guest chaplain program is relatively new. No, Your Honor. It's Heinz Precedence, which we cite in our brief, refers to the guest chaplain practice in the 19th century, indeed, as we note in our brief. But not at the time of the framing. I mean, Marsh relied very heavily on the proposition that, well, the same people who brought us the Bill of Rights and everything else were happy with morning prayer. Couldn't possibly be unconstitutional to have a religious prayer in the House. But there wasn't a guest chaplain program then. The record, the brief also notes that as early as the 1850s, the House had a period in which they didn't even have a chaplain. They exclusively invited guest chaplains to pray, and they were exclusively clergy. 1850s is very different than 1789. Well, Your Honor, town of Greece certainly does not stand for the proposition that unless you can prove something happened in 1789, it's unconstitutional because there was no comparable evidence of a comparable practice back in the 1790s being conducted by local government bodies. The point is it was comparable in its impact on Establishment Clause considerations to the conduct that Congress has been engaged in for 230 years, which is exclusively religious prayers. The idea that somehow broadening the identity of the prayer givers to include a range of clergy members rather than one single clergy member to deliver an exclusively religious prayer somehow makes the practice more constitutionally suspect, and all of a sudden at that point it's no longer permissible to limit the prayer opportunity to those who are willing to make religious prayers, I submit, is nonsensical. Is there some house rule prohibiting a guest chaplain who is an atheist? I can't find it. The house rule requires a prayer, so the house rule prohibits a guest chaplain who would deliver a secular invocation, whether that person is an atheist or not is beside the point. Well, could an ordained minister, suppose an ordained minister who's practicing in his faith says, applies and wants to deliver a non-theistic prayer? He would be denied. Indeed, Kurt recognizes the chaplain himself has no authority and would not be permitted to deliver a secular invocation, a non-religious prayer. But according to the allegations of the complaint, the chaplain has allowed non-theistic prayer. Well, so theistic and religious are two different things, and I prefer to talk about religion because the point is what the house has always required is a religious prayer, whether a non-theist religious person like perhaps a Buddhist. I see your point. Yes. I see your point. And the allegations of the complaint, the people that deliver the three prayers addressed in the complaint are all ordained pastors, and they're all prayers. They're all invoking a spirit, some higher power, and asking blessing and ending with amen in the traditional idiom of prayer. They're not secular invocations. They don't happen to name recognized deities, but there's no requirement that a prayer giver name a recognized deity. They have to deliver a prayer to a higher power, invoking blessing and so forth in the idiom of prayer. That's the only requirement. And the problem is plaintiff is unwilling to do that, as he made clear in the request and in his complaint. Let me ask you this since you mentioned the complaint. So in the letter that the chaplain wrote, he said setting aside the question of whether a non-theistic prayer could be a prayer, Mr. Barker fails a more fundamental requirement, which is that he be practicing in the field in which he was ordained, right? That's what he says. Yes, Your Honor. But when Mr. Barker met with the representative, he alleges that when he met earlier with representatives of the chaplain, that was not one of the requirements. The only requirement was that he be ordained. In other words, at the time he had his first meeting with representatives of the chaplain, he met all three standards. He was ordained, he wanted to give a prayer, and he said he didn't want to address the house. He alleges that in his complaint, paragraphs 34 to 35. Yes, Your Honor. Yeah. So what I'm getting at is given his allegation that the reason the chaplain gave in this letter was basically pretext for discriminating against a non-religious person, the issue before us is that now, correct? Do you agree with that? No, Your Honor. The question right before us now in his complaint is has he stated a claim for relief based on the argument that the chaplain is discriminating against him because he's not religious? Well, I would put it slightly differently. So the question of the ordination requirement is not something that we've relied on in our briefing in this case because they allege it's a pretext, and ultimately it's just part of the mechanism for getting at the ultimate question, which is the rule requires a prayer. Congress has always understood that to be a religious prayer and has always limited that opportunity to those who will deliver a religious prayer, and is that constitutional if you get to the merits? And the answer to that is clearly yes. Okay, good. No, that's very helpful. So you accept this, what you said is very helpful. That is the issue, right? Yes. On the merits. Given that this is a motion to dismiss, we have to accept the pleadings in the light most favorable to him, right? Yes, Your Honor. And his allegation of pretext is enough at this stage, so we're back to the core issue that you just stated, correct? Again, obviously we don't agree that it's a pretext. We haven't disputed that for pleading purposes. I totally get it, but at this stage, right? Okay. Did you have any other questions? Yeah, you're assuming or are you assuming a prayer cannot be given by an atheist? Well, I don't think a prayer could sincerely be given by an atheist. By definition, plaintiff concedes he's nonreligious and he's a nonbeliever and he's unwilling to invoke a higher power that is a power higher than man, which is what religion is talking about. And so I don't think he could – I don't think an atheist could sincerely give a religious prayer. Again, if someone who meets the criteria and claims to be willing to deliver a religious prayer, then – Religious prayer is not what's in the House rule. It just says prayer. Well, and that has always been construed to be religious, and the Supreme Court has said – Justice Ginsburg in her dissent in Kurtz said that the prayer – that the practice in Congress – the prayer practice in Congress is a religious one. It is religious prayer. It has always been exclusively religious. That is how the House construes its rule. That is how the House has always construed its rule, and that is why someone who seeks to deliver a secular invocation isn't entitled to do so, can't be permitted to do so. Even if the chaplain were ordered to permit such a person to do so, the chaplain would have no ability to do so because that person – the chaplain's discretion is limited to praying. The chaplain himself has no authority to deliver a secular invocation from the House floor, as this Court said correctly in Kurtz. Could the chaplain allow a Buddhist to give a prayer? Yes, Your Honor. I don't know that a Buddhist has delivered the House prayer, but I know the Dalai Lama delivered the prayer at the Senate. But that's a non-theistic – your point is your distinction that that's a non-theistic religion, whereas Mr. Barker says he's not religious. Is that the distinction you're making? Yes, although I'm not an expert in Buddhism, and my understanding is that there are various approaches in the Buddhist – in the large umbrella of Buddhist faith. I mean, so for instance, the Dalai Lama, when he prayed – delivered the opening prayer at the Senate, prayed to the Buddha and all other gods. What about a secular humanist? Well, that's what the plaintiff in Kurtz was, and again – I mean, Torcaso lists that as a non-theistic religion. Well, yes, and as Justice Kennedy pointed out in his opinion in the County of Allegheny case, which the Supreme Court in town of Greece validated as correctly stating the law, those sorts of statements have to be taken with a grain of salt because they depend on context. And the fact of the matter is there are – We don't take statements from the Supreme Court with a grain of salt here. Well, the problem is there are statements to the contrary, so you have to reconcile them. And the fact of the matter is the fact that you can't discriminate against non-religionists in certain contexts where you're providing secular benefits does not mean that you can't discriminate against non-religionists when the benefit at issue is a religious one, that is, a religious activity, the delivery of a prayer to open the legislature. And say once more for me, if you would, once more why – so I totally understand your argument. Because I get your argument about Marsh and that this is a religious program, but say once again why it is that opening it up to guest chaplains doesn't change the analysis. Is that it's not part of the – Well, you give me the answer. Just say again your clear statement of why that doesn't change the analysis, because that's Mr. Barker's argument, right? It doesn't change the analysis, at least for a couple of reasons. Number one, as I said, the test that the town of Greece court articulated looks to the longstanding traditions of the house. The longstanding traditions of the house include inviting guest chaplains going at least as far back as the 1850s and probably much longer, although the records are unclear when you go back further than that. So that's reason number one. Reason number two is the Supreme Court and this court have repeatedly emphasized that the prayer practice at the house that is constitutional, that is the model for determining the constitutionality of legislative prayer practices, is a religious practice. And therefore, by definition, the house is entitled to insist that those who are going to be given that opportunity will fulfill its requirements, namely deliver a religious invocation, that is, a prayer. And where is the house insisted on that? You're saying it's not in the rules. So where are you saying they're insisting? It is in the rules, Your Honor. It's not in the rules. The rule says prayer. Yes, a prayer, not an invocation. It doesn't say religious prayer. Are you assuming only religious believers can pray? I mean, we're getting into an area where I'm not sure where you're getting the support for your assertion. You're asserting it. And the thing that's bothering me is, apart from Justice Alito, which is a very clear statement of his understanding of what the court was doing, you can read Marsh and Town of Reese and subsequent understandings of those cases to suggest that the court, whatever they said in hearkening back to history, they did not mean to run over established First Amendment principles, which is you can't discriminate against nonbelievers. Now, there's one member of the court, and the court doesn't take issue with him in Town of Reese, a fairly strong statement. And there are other statements and other opinions as well that are saying, wait, don't read that history in excess because we have some overarching First Amendment notions here. You can't discriminate against a person because they're a nonbeliever. And I don't, you know, unless your position is nonbelievers can't pray, and I don't know where that's coming from. Well, so, again. I mean, maybe we just have different life experiences, and I guess you could say here's my philosophical understanding of it, and I would say, you know, that's not mine. But do you have some authority to support it? Because the rule doesn't say religious prayer. The question whether a nonbeliever could deliver a prayer is slightly different from the question in this case. The question in this case is whether a nonbeliever who's. . . Whether you can discriminate against nonbelievers in the guest chaplain program. That's the issue you're looking for. No, Your Honor. The question is whether the House can constitutionally, again, if we get to the merits, whether the House can constitutionally exclude people who seek to be guest chaplains but admit that they will not deliver a religious invocation, but instead desire to deliver a secular invocation. No, I think you're assuming things that we don't have here yet. The claim is the only thing that's facially there is enough to get it past the motion to dismiss. Can you discriminate against a nonbeliever in the guest chaplain program? Now, the additional factors that may come out that tip the scales one way or another would come out when you get to the merits, but that's all we have here. And I hear you saying, I think, that absolutely. . . And I don't think the House has done it. I think the chaplain has done it, which is yet another question. You're saying absolutely the House can have a rule based on Marsh and Tanigris that says we can discriminate in a guest chaplain program against nonbelievers, period. That's the end of this case. That's what I'm hearing you say. And I'm like, wow, I'm not sure I'm getting that from the case law. What I'm saying, Your Honor, and what the House is saying and has authorized me to say, I'm standing here as general counsel of the House authorized by the bipartisan legal advisory group, which speaks for the House in litigation matters and states the position of the House in litigation matters. And the position of the House is, as explained in our briefs below and in this court, that persons who desire to deliver a secular invocation in lieu of a prayer, as the House interprets its prayer rule and has consistently applied it for 225 years, are not entitled to do so because they are not qualified, they don't meet the requirements for the very limited exception to the normal rule of the House, which is that only members of the House, in accordance with House rules, can address the House during a legislative session. Does his complaint acknowledge the point you're trying to make now that I want to give a secular invocation in lieu of a prayer? I don't remember. Yes, Your Honor. The complaint attaches the request letter that was sent by Representative Pocan on behalf of plaintiffs to the chaplain, and it expressly says that he intends to deliver a secular invocation. In lieu of a prayer. That's the critical thing for me because you and I may have a different understanding of prayer. Your Honor, the House is entitled to interpret its own rules. We don't have anything from the House, at least not here. I'm looking at what the House has said. It doesn't answer the question about prayer that I'm raising with you, and I understand that you may have a different view than I tend to have, and I'm not saying that my view is dispositive. I'm saying that your view is not one that's uniformly held by everyone in this world. This is Exhibit A to the complaint. Here's what the request letter said, that the plaintiff, quote, intends for his invocation to be secular, close quote. And in terms of the House's position, the Supreme Court is. Secular as opposed to what? In terms of the House's position, well, secular by definition is opposed to religious. The Supreme Court has said that the House's prayer tradition is religious. Justice Ginsburg, in her opinion, in Kurtz, said that the congressional prayer practice is exclusively religious. So it's secular, not as opposed to prayer. Well, a secular invocation is by definition not a religious invocation, and therefore it is not a prayer as the House interprets it. And this Court's decision in Rostenkowski precludes this Court from taking issue with that interpretation, because unless the Court could say, which it could not plausibly say, that prayer unambiguously, that the House's prayer rule unambiguously requires the House to permit secular invocations, contrary to 225 years of history, then at worst it is ambiguous. And under Rostenkowski, this Court cannot second-guess the House's interpretation. Let me play this out a little bit more, because Conroy's letter, and this is the reason I'm probing this, because Conroy, I think, was being advised. He said, leaving aside questions of whether the secular invocation that your February 18 letter indicated Mr. Barr proposed to deliver would constitute a prayer. That's what he says, and that's exactly the point I'm raising. And you're asserting with great force as if it's clear beyond a doubt. If it's clear beyond a doubt, I wouldn't have expected Conroy to respond the way he did. Conroy says, I don't want to touch that, probably for the reasons that I'm feeling. It's not as clear as you're saying. And if it was so clear under House rules, Conroy would not have responded the way he did. He would have said, this is all very clear. Prayer only has one meaning, and you're trying to tread. You say, no, I don't want to get into that. Secular invocation is or is not a prayer. Well, what the chaplain's letter says is that he has these threshold requirements that he applies, one of which is the ordination requirement. Now, again, this is going to be on the complaint. The reality is the ordination requirement is applied in a flexible manner to avoid excluding religions that don't have a traditional ordination practice but have some other mechanism for identifying religious leaders, clergy, of whatever faith they may happen to practice, which is what the House has always required for the persons who will be delivering prayers. But since the plaintiff alleges that this is pretextual and it gets into factual matters, we have, for purposes of briefing the case, addressed the underlying question. But certainly if the case were to proceed, which it clearly should not, there would be opportunities to get into the factual matters there as well. So the fact that the chaplain relied on his threshold requirements for implementing the prayer requirement does not mean that the chaplain somehow doesn't agree with the position that we've stated in this brief on his behalf as authorized by the House of Representatives, which is that the congressional prayer practice is exclusively religious and a person who refuses to deliver a religious invocation is not qualified for the opportunity. Right. So we're back to where you and I were ten minutes ago, which is that the question before us in his complaint is, has he stated a claim that the House's rejection of him is only because a secular invocation is not a prayer? That's the question, right? You agree with that? You're saying, no, that's not unconstitutional, correct? It's not unconstitutional for the House to take the position that a non- that a secular invocation is not a prayer? Within the meaning of the House practice and tradition, yes, that's correct. Okay. All right. So setting aside what the chaplain said in the letter, namely that he wasn't addressing that question, we ought to take your brief as stating that it is the position of the House that a secular invocation is not a prayer and that's constitutional. Right? That's correct. And just to repeat, his arguments, you're not challenging his claims that his argument that the reliance on the ordination rule was pretext. So we're back to the core issue, right? Yes, Your Honor. All right. Okay. Okay, great. And in answer to Judge Tatel, I know we may be going around a little bit again, but I want to make sure I understand you. Your critical premise is a prayer can only be given by a religious person. No, Your Honor. The critical premise is that a prayer is what's required, and a person who refuses to deliver a prayer, as the House has always interpreted that term, and as the Supreme Court has said that term is to be interpreted, that is the prayer practice. What the Supreme Court said in the Tattler case, the prayer practice upheld in Marsh was, quote, religious in nature, close quote. That is the nature of the practice we're talking about. Legislative prayer is constitutional. Legislative prayer as upheld in Marsh is religious in nature, and legislative bodies are entitled to continue practicing that practice, which is religious in nature. So, therefore, by definition, a legislative body can exclude people who are not willing to deliver a religious invocation because that's not the practice that they are entitled to engage in. The problem for you is that as strong as Marsh is, it doesn't really address the question that we're talking about, the way you're now making your argument. That is, can you exclude nonbelievers? Well, Justice Ginsburg thought it did. Unless, again, your definition of prayer, and you keep dancing around this and I keep pushing it because I'm really trying to understand what you're saying, can a prayer be given by someone who's not religious? And maybe we have different views on it, but you don't want to, you know, and I'm not sure what you're saying. Marsh just doesn't answer the question about nonbelievers being excluded. If I understand your point, it's that perhaps anyone could give a prayer, a religious invocation, but the plaintiff here has said he doesn't want to do that. That is certainly correct. He does not propose to do that. The plaintiff here has excluded himself. He might be able to. Perhaps anyone could. That's not before us. He doesn't propose to do that. If you're right. But he says he's not religious, but he will appeal to a higher being, to God. What do you think he's saying he's not proposing to do? I'm missing it. Well, he is proposing. Again, so I understand your argument. What is he not proposing to do? The proposal was, on the face of the complaint and the exhibits, to deliver a secular invocation. A secular invocation is not a religious invocation. Right. And the House's tradition, as construed by the Supreme Court, requires a religious invocation, a prayer, as construed by the House. Therefore, he is not willing. You're conflating. All right. We're going around. And what about his argument that the Establishment Clause prohibits discrimination against non-religions? Well, that is not a blanket requirement. That doesn't apply in the Marsh situation. Is that your point? Yes, Your Honor. It doesn't apply in the Marsh situation and in other situations. I mean, as Justice Kennedy has pointed out, there are all sorts of situations in which government accommodates or benefits religion in some fashion that obviously accommodates religion and not non-religion. So it's simply not true that, as a categorical matter, government can never distinguish between religion and non-religion. And this is one of the contexts in which it clearly can, because the very nature of the activity that the government is authorized to necessarily discriminates, if you will, between religion and non-religion because it's a religious activity. Okay. All right. Anything else? No. Okay. Thank you. Thank you. Did he have any time left? No. No. You can take three minutes. Mr. Seale. Go ahead. Mr. Seale. Thank you, Your Honor. Yeah. I think the purposes of legislative prayer would be useful here, to put legislators in a solemn or deliberate frame of mind, to lend gravity to public business, to remind lawmakers to transcend petty differences in pursuit of a higher purpose, to set their mind to a higher purpose and thereby ease the task of governing, and to express a common aspiration to adjust in peaceful society. That's what the courts have said. Nothing in those purposes requires the prayer be directed to a god or that the prayer be religious. And just in closing, I would ask that Your Honors read Barker's proposed prayer on page 64 of the appendix. Barker wished to invoke the same higher power that's recognized in our Constitution, we the people. He wanted to invoke the spirit of some of our most influential founders, Thomas Paine, Thomas Jefferson, James Madison, Elizabeth Cady Stanton, and Frederick Douglass. I think it would be bizarre if a tradition that dates to the founding was used  Are you saying that his proposed secular invocation was a prayer? Yes. As I stated at the beginning, Barker wishes to give a prayer. He was invited to give a prayer, and we chose the phrase invocation just and stuck with it as uniform. A non-religious person can give a prayer. Yes, Your Honor. He's praying to a higher authority. He is, Your Honor. It's just not a God. What do you say to, I'm sorry. No, you go ahead. What do you say to counsel for the House reference to Rostenkowski and more particularly to the deference we owe House rules? Pardon me, House interpretations of its own rules. This is the chaplain, and I think Well, the chaplain is the correspondent and the speaker in the record. We now have a brief taking a position approved by the leadership of the House. Correct, Your Honor. The goalposts have moved throughout. The chaplain first sat on Barker's request for more than 10 months. Then he said that he believed it was not genuine, even though he had a letter from two attorneys. He, at that point, wished to see Barker's draft invocation, and then he has these what we allege are pretextual rules that he applies desperately Now the House leadership comes in, and none of that matters because the prayer is what he's proposing is not a prayer. Yeah, and I mean the House rule is, the only real issue here is does this fit under the House rule of prayer, and we think it absolutely does. We've pointed to other prayers, not only other prayers, but one individual, Andrew Walton, gave that prayer on May 5th to the spirit that unites all people, and then the chaplain approved him to give another prayer four months later where no higher power was invoked at all. He just said, we give thanks. And so it's not just that the chaplain is allowing individuals to give non-theistic prayers. He's then re-approving them to do so again. He just excluded Barker because Barker's an atheist. Do you think, I have a question about, given Marsh, what the authority of this lower court is. Okay, so Marsh is, it's very clear, as everybody agrees, Marsh understood that the prayer practice in the House was a religious practice. Right? I mean, that's what it was. And given that, and given that the court was so clear that it was not applying a limit at all, is this court free to go beyond that just because it's opened it up to guest chaplains? Again, Your Honor. How do we do that? We're completely bound by Marsh. It's told us that Lemon doesn't apply. It's told us it's a religious event. It's a religious practice. So how do we go beyond that? Because the town of Greece has laid out that non-discrimination principle. And both Marsh and Greece talk about having an impermissible motive underlying the legislative prayer practice. And the impermissible motive here is excluding atheists. Correct. Excluding non-religious persons. From delivering the prayer, yes, Your Honor. Well, so then, go back to my question that I asked you earlier. Suppose Mr. Barger applied to be the chaplain. I thought you said that would, it sounds to me like you say they couldn't deny it to him because he's an atheist. I think motive matters, Your Honor. And if the rule were a categorical exclusion of a certain class or belief set, if the rule were no Jews need apply, then yes, I think that would be problematic. Yeah, but that's because Jews are religious. He says he's not religious. You can't, I thought we established when you were standing up before, this is a question about not discrimination between religions, but discrimination against non-religious people, against atheists. Correct? That's what this case is about. Against Mr. Barger, yes, Your Honor. Yeah. So. I think, as I said, I think the permanent hiring of a chaplain presents a different case. Yeah. And I think. It does, I agree. But. Once there's this guest chaplain program, that the. And what about counsel's argument? Well, look, this guest chaplain program goes all the way back to the 19th century. It's established. That's the question I asked you earlier about the town of Greece. It says, you know, when looking at whether a particular practice is constitutional or not, we look at tradition and history, and he said this thing's gone back at least to the middle of the 19th century. And it also says that there must be a policy. The town must maintain a policy of non-discrimination, that the policy can't reflect an aversion or bias. And we absolutely have that here. And in addition, we have these other prayers that are nearly identical to the prayers that, the prayer that Mr. Barker wishes to give. It's just a question of who he is, an atheist. And that's why he was denied. So in other words, your point is that they would have allowed this prayer to be offered by a religious person, just not an atheist. I think that is true, Your Honor. Okay. Anything else, Tom? Thank you both. Thank you. Case is submitted. Stand, please.
judges: Tatel, Edwards, Ginsburg